UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| BRYANT PERKINS, | ) |
|---|---|
| Plaintiff, | ) |
| vs. | ) Case No. 1:15CV00028 AGF |
| ARCHER DANIELS MIDLAND CO., | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's motion to remand the case to the state court in which it was filed. Plaintiff, Bryant Perkins, a citizen of Missouri, brought this action in state court asserting a negligence claim under the Jones Act, 46 U.S.C. § 30104, et seq., as well as a claim for maintenance and cure under general maritime law.[1] Defendant is Plaintiff's employer, Archer Daniels Midland Company, a Delaware corporation with its principal place of business in Illinois. Defendant removed the action to this Court, invoking the Court's diversity jurisdiction under 28 U.S.C. § 1332(a). Plaintiff then timely filed the instant motion to remand. For the reasons set forth below, Plaintiff's motion to remand will be denied.

## BACKGROUND

---

[1] A claim under the Jones Act is an action for a seaman who suffers an injury in the course of his employment, as a result of negligence by his employer; a claim for maintenance and cure concerns a vessel owner's obligation to provide food, lodging, and medical services to a seaman who was injured while serving a vessel. *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 441 (2001).

In his state court petition, Plaintiff alleges that on August 5, 2014, while he was working on a barge located at Defendant's New Madrid facility, his leg was seriously injured when it was caught in the equipment used to steer the barge. The New Madrid facility, which includes a grain elevator, dock, and a port, is engaged in the loading of grain and rice onto barges located on the Mississippi River. Plaintiff claims that his injury was the result of Defendant's negligence, as Defendant had allegedly removed a safety guard from the equipment, rendering it unreasonably dangerous. Plaintiff alleges that at all relevant times he was employed as a seaman for purposes of the Jones Act, and that Defendant had a duty under the Jones Act to provide him with a safe place to work.

In Defendant's notice of removal, it asserted that removal was proper based on diversity jurisdiction, because Plaintiff fraudulently pleaded that he is a Jones Act seaman, and thus is not entitled to the protections of that Act, which generally precludes removal even when diversity of jurisdiction exists. Defendant maintained that Plaintiff is a land-based worker whose remedy lies with the federal Longshore and Harbor Worker's Compensation Act, 33 U.S.C. § 901 ("LHWCA"), rather than the Jones Act.

In Plaintiff's motion to remand, he reasserts that he is a seaman subject to the protections of the Jones Act, and because the Jones Act prohibits removal, remand is required. In support of his assertion that he is a seaman for purposes of the Jones Act, Plaintiff has submitted his own affidavit (Doc. No. 11-1) in which he attests that he performed many duties for Defendant that are traditionally associated with seaman status, including general deckhand duties, such as cleaning and sweeping barges, clearing barges of ice, opening hatches, and inspecting for leaks. Plaintiff attests that on many

2

occasions he performed these deckhand duties while on board a barge as it was moving through the river. Plaintiff also attests that his job involved various navigational functions, including moving barges through the river using winches and cables, tying off barges to the shoreline, helping moor barges, positioning barges for retrieval by tugs, and securing barges with straps and cables. Plaintiff attests that he was required to wear a life jacket while at work, and that he spent a "significant period" of each workday performing the above-described duties while on board barges located at Defendant's facility.

Plaintiff maintains that at this point in the proceedings, he does not have to establish that he is a seaman to warrant remand, but must simply show, through his pleadings and affidavit, that it is possible he could be found to be a seaman, and he argues that he has sufficiently made such a demonstration. For these reasons, Plaintiff insists that this is a non-removable Jones Act case, and remand to the state court is required.

In its response to Plaintiff's motion to remand, Defendant concedes that Jones Act claims are generally not removable, but reasserts that because Plaintiff has fraudulently pleaded seaman status, the Jones Act does not bar removal in this case. Defendant does not dispute that Plaintiff performed the above-described duties, but maintains that they do not grant Plaintiff seaman status. Defendant argues that, although Plaintiff did spend part of his workday on board vessels, he did not have a connection to an identifiable fleet of vessels under common ownership or control that

was substantial enough in terms of its nature and duration to qualify as a seaman under the Jones Act.

Defendant relies on the affidavit (Doc. No. 15-1) of the supervisor at the New Madrid facility, Zachary Parker, in which Parker attests that Plaintiff was employed by Defendant as an Elevator Worker, and performed mostly tasks on land, such as unloading grain from trucks, cleaning cargo spills, and operating the control board to direct grain to the proper bins. Parker's affidavit states that during the 12 months preceding Plaintiff's injury, the facility loaded 357 barges, owned by 14 separate entities. Of those 357 barges, 272 of them were owned by Defendant's wholly owned subsidiary, American River Transportation Company ("ARTCO"). Parker attests that Plaintiff spent at most 23.2 percent of his time performing duties while on board barges floating in the river, and 20.1 percent of his time on such ARTCO barges. Parker based these figures on Loaded Barge Reports and payroll records submitted by Defendant. These documents show which barges Perkins would have boarded to help load, and his starting and stopping times. Parker states that in the "few instances" in which the Loaded Barge Reports had "incomplete information regarding the starting and stopping time" of workers on the barges, Parker relied on an average loading time.

Defendant reiterates its contention that Plaintiff is not a seaman but a land-based worker whose "sole remedy" lies with the LHWCA, under which he allegedly already received benefits, rather than with the Jones Act.[2] Defendant maintains that because

---

[2] Defendant does not expand upon its argument that Plaintiff's sole remedy lies with the LHWCA, other than stating that because Plaintiff is not a seaman, "he is clearly a

4

Plaintiff cannot establish that he is a Jones Act seaman, the Court should deny the motion to remand. Plaintiff did not file a reply to Defendant's response to the motion to remand, and the time to do so has passed.

## **DISCUSSION**

It is unquestioned that Jones Act suits are generally not removable under either federal question or diversity jurisdiction. *Banks v. Archer Daniels Midland Co.*, No. 4:10CV700DDN, 2010 WL 2265165, at *2 (E.D. Mo. June 2, 2010). The Jones Act incorporates the provisions of the Federal Employers' Liability Act ("FELA"), including 28 U.S.C. § 1445(a), which bars removal from state to federal court, and FELA decisions apply with equal force to claims brought under the Jones Act. *Alholm v. Am. Steamship Co.*, 144 F.3d 1172, 1180 (8th Cir. 1998).

Generally, in order to determine whether a Jones Act claim has been properly alleged, federal courts restrict their inquiry to a review of the plaintiff's pleadings. *Addison v. Gulf Coast Contracting Serv., Inc.*, 744 F.2d 494, 498 n.3 (5th Cir. 1984). However, this limitation on the scope of inquiry does not apply where a defendant alleges that a Jones Act claim has been fraudulently asserted. *Rainey v. Union Pac. R. R. Co.*, No. 4:05CV781RWS, 2005 WL 1662049, at *1 (E.D. Mo. July 5, 2005) (explaining that courts may look beyond a plaintiff's pleadings in order to determine whether a claim has been fraudulently pleaded) (citing *Boyle v. Chicago, R.I. & P. Ry. Co.*, 42 F.2d 633,

---

worker covered by the LHWCA." (Doc. No. 15 at 11.) Defendant also did not submit any evidence showing that Plaintiff received benefits under the LHWCA. The Court notes, however, that "an employee who receives . . . payments under the LHWCA . . . is not barred from subsequently seeking relief under the Jones Act." *Sw. Marine, Inc. v. Gizoni*, 502 U.S. 81, 91 (1991).

634-35 (8th Cir. 1930)); *Duet v. Am. Comm'l Lines LLC*, 2013 WL 1682988, *2 (E.D. La. Apr. 17, 2013) ("District courts may pierce the pleadings and utilize a summary judgment-like procedure to determine whether a plaintiff has fraudulently pleaded a Jones Act claim.") (citing *Holmes v. Atl. Sounding Co., Inc.*, 437 F.3d 441, 445 (5th Cir. 2006)).

The mere assertion of fraud is not sufficient to warrant removing the case to federal court. *Burnside v. Railserve, Inc.*, No. 1:12CV1025, 2012 WL 5287979, at *1 (W.D. Ark. Oct. 23, 2012). Defendant bears the burden of proving that the allegations of the complaint were fraudulently made, and any doubts should be resolved in favor of Plaintiff. *Id*. In order to defeat Plaintiff's motion to remand in this case, Defendant must prove that Plaintiff's allegation of Jones Act seaman status is "so baseless, colorable and false as to constitute a fraudulent attempt" to evade federal court. *Id*. (quoting *Farmers' Bank & Trust Co. v. Atchison, Topeka & Santa Fe Ry. Co*., 25 F.2d 23, 31 (8th Cir. 1928)).

The Jones Act "provides a cause of action in negligence for 'any seaman' injured in the course of his employment." *Chandris, Inc., v. Latsis*, 515 U.S. 347, 354 (1995) (quoting 46 U.S.C. § 688(a)). The Jones Act does not define the term "seaman," but rather, leaves the courts to determine which workers are entitled to the Act's protection. In *Chandris*, the Supreme Court developed a two-part "status-based standard": (1) the "employee's duties must contribute to the function of the vessel or to the accomplishment of its mission"; and (2) the employee "must have a connection to a vessel in navigation

(or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." *Id.* at 368 (citations omitted).

The first of these requirements is very broad, and numerous courts have recognized that satisfying the first prong of *Chandris* is not difficult. *See, e.g.*, *Smith v. Marine Terminals of Ark., Inc.*, No. 3:09CV00027 JLH, 2010 WL 4789167, at *2 (E.D. Ark. Nov. 17, 2010). Defendant does not dispute that Plaintiff's duties could have contributed to a vessel's function, and it seems clear that many of the duties performed by Plaintiff contributed to the function of the barges on which he worked. Therefore, whether Plaintiff may be a seaman under the Jones Act will be determined by whether Plaintiff has made a non-fraudulent claim that he has a connection to a vessel or indentifiable group of vessels that was substantial in terms of both duration and nature. *See Chandris*, 515 U.S. at 368.

Defendant asserts that Plaintiff does not have a connection to an identifiable group of vessels, because the barges on which Plaintiff worked were not a finite group of vessels acting under common ownership or control. The record before the Court establishes that during the 12-month period preceding the day Plaintiff was injured, the New Madrid facility provided services for 357 barges, 272 of which were owned by Defendant's subsidiary, ARTCO. That is a substantial percentage of the barges on which Plaintiff worked, and the Court is unwilling to find the allegation that the ARTCO barges could be found to constitute a group of vessels under common ownership or control to be so "baseless, colorable and false" as to constitute a fraudulent attempt by Plaintiff to evade federal court. *See Bouvier v. Krenz*, 702 F.2d 89, 91 (5th Cir. 1983)

7

(holding that a group of vessels may be defined as the variously owned vessels putting into the shipyard for servicing). Further, it is well established that the vessels on which a seaman performs his duties need not be owned by his employer, so it is of no consequence that the 272 barges were not directly owned by Defendant. *Hammett v. Sodexo, Inc.*, No. 11CV1447, 2012 WL 1237742, at *5 n.5 (E.D. La., Apr. 12, 2012).

Assuming *arguendo* that the ARTCO barges on which Plaintiff worked constituted an identifiable fleet, Defendant next asserts that Plaintiff nonetheless fails the seaman status test because he did not spend enough time on board barges. The *Chandris* test requires that one's connection to a group of vessels be "substantial" in terms of its duration. *Chandris*, 515 U.S. at 368-69. Concerning this temporal element of the *Chandris* test, the Supreme Court attempted to give lower courts a "guideline" with which to gauge how much time working on a vessel would be adequately "substantial" in duration, stating that "[a] worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." *Id.* at 371. The Court went on to note that this 30 percent figure is just a guideline and the inquiry into seaman status was a fact specific one. *Id.*

Defendant maintains that Plaintiff cannot meet the 30 percent guidepost established by *Chandris*, because he spent at most approximately 23 percent of his time working on board vessels, as attested to by Parker, and as demonstrated by the Loaded Barge Reports and payroll records submitted by Defendant. Plaintiff, in turn, attests that he spent a "significant period" of each workday on board barges on the river. However, Plaintiff provides no indication of how much time he considers to be "significant," and

provides no further detail as to how much time he actually did spend working on barges each day. The unopposed attestations of Parker, coupled with the information submitted to the Court in the form of Loaded Barge Reports and payroll records, indicate that Plaintiff did not spend more than approximately 23 percent of his time working on board barges, and approximately 20 percent working on an identifiable group of barges. Nothing alleged by or attested to by Plaintiff suggests that he spent more than 23 percent of his time working on barges. Perhaps Plaintiff considers that to be a "significant" amount of time, but that does not change the fact that 23 percent falls significantly short of the 30 percent mark set by the Supreme Court in *Chandris*. The Court is mindful of the fact that some additional marine work may have been performed by Plaintiff on the barges, due to Parker's reliance on average loading times in a "few instances." However, since an estimate was relied on in only a "few instances," the Court is unwilling to conclude that the amount of time Plaintiff spent working on barges would change significantly if the exact amount of time could somehow be determined.

When Defendant's evidence is compared to Plaintiff's conclusory attestation that the amount of time he spent working on barges was "significant," the Court must conclude that Plaintiff's assertion that he is a Jones Act seaman is so "baseless, colorable and false" as to constitute a fraudulent attempt to evade federal court. The second prong of the *Chandris* test is conjunctive in nature; an injured worker's connection to a vessel or group of vessels must be substantial in terms of both duration and nature. *Chandris*, 515 U.S. at 368. Because the Court concludes that Plaintiff cannot satisfy the durational

component of the *Chandris* test, the Court need not address whether Plaintiff had a connection to a group of vessels that was substantial in nature.

The Court concludes that Defendant has met its heavy burden of showing that Plaintiff's Jones Act claim was fraudulently pleaded, and thus, removal was proper.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for remand is **DENIED**. (Doc. No. 11.)

          *Audrey G. Fleissig*
          AUDREY G. FLEISSIG
          UNITED STATES DISTRICT JUDGE

Dated this 1st day of June, 2015